408 So.2d 49 (1981)
LOUISIANA POWER AND LIGHT COMPANY, Plaintiff-Appellee,
v.
Harry D. ROBERTS, Jr. and Mary Catherine Wishum Roberts, Defendants-Appellants.
No. 8502.
Court of Appeal of Louisiana, Third Circuit.
December 16, 1981.
Rehearing Denied January 29, 1982.
Patrick L. Durusau, Jena, for defendants-appellants.
Theus, Grisham, Davis & Leigh, Robert L. Curry, III, Monroe, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and DOUCET, JJ.
GUIDRY, Judge.
This is a suit instituted by plaintiff, Louisiana Power and Light Company (hereafter LP&L), against defendants, Harry D. Roberts, Jr. and Mary Catherine Wishum Roberts, wherein plaintiff seeks to obtain a permanent injunction prohibiting alleged interference by defendants with a servitude owned by plaintiff for the construction, use, and maintenance of an electric transmission line over certain land situated in LaSalle Parish, Louisiana.[1] Specifically, plaintiff alleges that the construction by defendants of a building within its right of way will significantly interfere with the exercise of plaintiff's servitude rights. Following trial of the matter, the trial court issued the permanent injunction as prayed for by plaintiff. Defendants appeal from that judgment.
At trial, the parties stipulated to most of the relevant facts. The aforesaid stipulation provides as follows:
(1) LP&L is the owner of a right of way 60 feet in width crossing the property purchased by defendants from the Bodcaw Company (hereafter Bodcaw). Approximately ten years prior to the filing of the instant action, LP&L constructed a 13 K.V. electric transmission line over such property and within the aforesaid right of way.
*50 (2) In December of 1980, defendants acquired the property from Bodcaw subject to LP&L's servitude.
(3) Construction of the building on the property in dispute began prior to the filing of the instant action, but the most advanced stage of construction achieved by the time of trial was the pouring of the concrete foundation which occurred on Tuesday, April 7, 1981.
(4) Defendants intend to erect a building on the property subject to LP&L's servitude, 30 feet in width by 86 feet in length with a front height of 10 feet and a rear height of 8 feet with a sloping flat roof. The proposed building is to be situated within the servitude area and immediately beneath the existing 13 K.V. electric transmission line.
The trial court rendered judgment in favor of plaintiff ordering the issuance of a permanent injunction restraining, prohibiting, and enjoining the defendants from constructing any building or other obstruction on or within the boundaries of the 60 foot right of way acquired by plaintiff from defendants' ancestor in title, Bodcaw. In rendering judgment the trial court concluded that the right of way agreement did not reserve, either expressly or impliedly, to Bodcaw, or to any successor in title, the right to construct a building within the limits of the 60 foot right of way. Additionally, the trial court, in its written reasons for judgment, concluded that the proposed construction of a building directly underneath plaintiff's 13 K.V. electric transmission line would substantially impair and inconvenience plaintiff's use of its right of way.
Defendants contend on appeal that the trial court erred in reaching the aforesaid conclusions.
At the outset, we observe, contrary to defendants' suggestion, that the servitude agreement does not expressly reserve to the grantor the right to construct a building within the servitude area. Paragraph 6 of the servitude agreement provides:
"It is further understood and agreed that grantor reserves to itself full use of the rights of way herein granted or any part or parts of them for any purpose or purposes including, but not limited to, exploration thereon for oil or gas or minerals, ingress and egress to any other lands or roads, construction, use and maintenance of roads thereon, cultivation or fencing in any manner thereon, transportation of timber thereon, or any combination of uses provided that no drilling of wells or mining will be conducted thereon unless no other suitable location is available and provided further that grantor will not intentionally interfere with the exercise by grantee of any of the rights herein granted to it." (Emphasis ours)

Defendants argue that since the grantor of the servitude in question reserved to itself the full use of the right of way granted for any purpose, then such reservation includes the right to construct buildings within the right of way area. Defendants contend that such is the case even if such structure is to be located directly underneath LP&L's 13 K.V. line. We disagree.
The meaning of the language contained in Paragraph 6 of the servitude agreement as quoted above is clear. It simply provides that the grantor reserves unto itself such use of the servitude area as will not interfere with the exercise by grantee of the rights granted to it. Thus, the issue becomes whether or not the construction by defendants of a building within the servitude area, immediately beneath plaintiff's existing transmission line, will interfere, inconvenience or diminish the exercise by LP&L of the rights granted to it under the servitude agreement.
The trial court held that such construction would seriously interfere with LP&L's rights under the servitude agreement. We fully agree with this conclusion.
Expert testimony in the record clearly establishes that the proposed building will seriously interfere with LP&L's access to the right of way for the purpose of maintaining and repairing its transmission line. Further, such testimony indicates that the proposed structure will constitute an extreme *51 fire hazard which, in the event of a fire, would result in the power lines and equipment being placed out of commission causing considerable expense and delay in the restoration of needed services. Additionally, defendants' proposed construction will make impossible the use of that portion of the right of way occupied by the building for installation of guywires, bracing poles, concrete foundations, etc. Finally, the proposed construction would completely prevent the passage of vehicles and equipment reasonably necessary and customary for the maintenance of LP&L's transmission line. The aforesaid rights are clearly granted to LP&L by the servitude agreement and we conclude that to permit defendants to complete the construction of a building within the right of way will not only inconvenience and/or interfere with the exercise by the grantee of such rights but also would effectively deny the exercise of such rights by LP&L.
The trial court's conclusion is confirmed by the testimony of several experts presented by plaintiff. The record reflects that their testimony is uncontradicted. It is well settled that courts are bound to give proper credit and due weight to opinions and conclusions of experts especially when their testimony is unimpeached, uncontroverted and based on sound reasoning and on established facts. See Geismar v. General Gas Corp., 182 So.2d 769 (La.App. 1st Cir. 1966) writ denied, 184 So.2d 733 (La.1966). Alvin Calhoun, division land superintendent for LP&L, indicated at trial that the construction of the proposed building would obstruct LP&L's use of their right of way, pose a fire hazard, and impair LP&L's ability to properly maintain the electric transmission line. Calhoun also stated that the location of the building directly underneath the electric transmission line could endanger the occupants of the building should the line move or fall onto the structure. Clifford LaFleur, land and right of way superintendent for Central Louisiana Electric Company, Inc., and Dudley Bertrand, division engineer for LP&L, both corroborated Calhoun's testimony. LaFleur and Bertrand both indicated that the building would constitute an obstruction to the continuity of service to customers as well as an obstruction to the maintenance and operation of the line. LaFleur stressed that the worst hazard is the possibility of fire and its resulting damage to the line. Additionally, V. L. Tolver, a LP&L serviceman, testified that the construction of the proposed building would impede access to the 13 K.V. electric transmission line in that servicemen could not get their equipment in such a position as to repair a break in the line.
We conclude from the evidence in the record that the construction by defendants of a building within plaintiff's right of way, and particularly, underneath plaintiff's existing 13 K.V. electric transmission line will constitute an obstruction to the use and maintenance of the line and will seriously interfere with LP&L's right of passage over its right of way and its use of the right of way in general. Additionally, the threat of fire posed by construction of the building presents a substantial hazard which would cause further problems in the repair and maintenance of the line as well as result in undue delay in restoration of needed services. The trial court concluded the same and we discern no error in such conclusion. See Canter v. Koehring, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, writ granted, 359 So.2d 1303 (La. 1978), 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3rd Cir. 1979); Bertrand v. Aetna Casualty and Surety Company, 306 So.2d 343 (La.App. 3rd Cir. 1975).
In addition to the recitals contained in the servitude agreement proscribing interference by the grantor with the rights of the grantee, Louisiana Civil Code Art. 748 provides that the owner of the servient estate may do nothing tending to diminish or make more inconvenient, the use of the servitude. This codal article is further authority for the judgment rendered by the trial court. See also, Louisiana Power and Light Company v. Bennett, 107 So.2d 468 (La.App. 1st Cir. 1958); United Gas Pipe Line Company v. Bellard, 286 So.2d 109 *52 (La.App. 3rd Cir. 1973); and, Red River, Atchafalaya and Bayou Boeuf Levee District v. Noles, 406 So.2d 294, (La.App. 3rd Cir. 1981).
For the above and foregoing reasons, we conclude that the judgment of the trial court should be affirmed at appellants' cost.
AFFIRMED.
NOTES
[1] The parties, at time of trial, agreed that they were ready for trial on the permanent injunction and specifically requested that the matter be tried on the issue of whether or not the permanent injunction should be granted.