POLITZ, Chief Judge,
dissenting:
The majority opinion fails to apply the Louisiana Civil Code provisions controlling immovable property and I must respectfully dissent.
In my opinion the unique characteristics of Louisiana’s civil law involving immovables, the common-law equivalent of real property, are dispositive of the issue before us today and these provisions mandate reversal. Although eminent domain powers are derived from federal law,[1] a proper view of federalism requires that the law of the state where the immovable property is located become the controlling federal rule when a court must determine property interests and the proper disposition thereof.[2]
Under the Louisiana Civil Code, fee simple title and easements do not exist as such. The common-law term “fee simple” corresponds to what in civil law is known as “perfect ownership.”[3] “Perfect ownership” gives the unlimited right to use, enjoy, and dispose of one’s property, and these rights, termed the “usus,” “fiructus,” and “abusus,” must be united in the same person to constitute “perfect ownership.”[4] When, as is presented in this ease, the property is subject to a limited personal right-of-use servitude, the element of “usus” is restricted and ownership is burdened with a real right in favor of another, leaving the property owner with only “naked ownership.”[5] As naked owners the Wiltzes could not, as the majority holds, sell to the government a property interest they did not own, i.e., the common-law equivalent of fee simple title. That is not legally possible under the controlling civil law provisions.
The critical error in the majority’s analysis results from a failure to accord to the servitude at issue that which the Civil Code mandates. Under Louisiana’s civil law system, “servitudes are restraints on the free disposal and use of property.”[6] A limited personal right-of-use servitude involves an element of the right of ownership — the “usus” element.[7] Louisiana courts have underscored that a servitude under Louisiana law is not legally identical to an easement under the common law because the servitude owner occupies a significantly superior position. Under the civil law, the owner of the servient estate can *1036 do nothing to diminish the use of the servitude or make it more inconvenient.[8] Accordingly, Fairfax County,[9] upon which the majority heavily relies, is distinguishable, not dispositive[10] and, most importantly, cannot be applied in a civil law setting with its unique property ownership structure. In light of the unyielding legal provision that a limited personal right-of-use servitude includes an element of the right of ownership under civil law, when land that is burdened with a servitude is taken by eminent domain, if the government is to obtain the common-law equivalent of fee simple title the government must take both ownership and servitude, making the person entitled to the servitude a necessary party to the proceedings. The government in this instance not only failed to obtain the servitude holder’s consent, but it failed to make the servitude holder a party to the underlying proceedings by giving the requisite Rule 71A notice.
The government did not obtain the common-law equivalent of fee simple title. It could not do so from the Wiltzes alone; it did not do so by adding Texaco, assuming it had the power to do so.[11] The Texaco deer-hunting servitude, a real interest in the property, has not legally been acquired by the government. It belongs to the Wiltzes. They should be compensated for its fair value if they are deprived of its ownership as the majority has affirmed. I must dissent. I would vacate the summary judgment entered by the district court and remand for entry of summary judgment in favor of the Wiltzes.

. United States v. Certain Parcels of Land in Fairfax County, 345 U.S. 344, 73 S.Ct. 693, 97 L.Ed. 1061 (1953).

. Georgia Power Co. v. Sanders, 617 F.2d 1112 (5th Cir. 1980).

. Wilson v. Aetna Ins. Co., 161 So. 650 (La.App. 1935).

. Id.

. La. Civ.Code art. 478.

. Buras Ice Factory, Inc. v. Department of Highways of La., 235 La. 158, 103 So.2d 74, 80 (1957).

. 3 A.N. Yiannopoulos, Personal Servitudes §§ 1, 237 (3d ed.1989).

. Arkansas Louisiana Gas Co. v. Cutrer, 30 So.2d 864 (La.App.1947); Louisiana Power & Light Co. v. Bennett, 107 So.2d 468 (La.App.1958); La. Civ.Code art. 748; see also La. Civ.Code art. 645.

. 345 U.S. 344, 73 S.Ct. 693, 97 L.Ed. 1061.

. The Lanham Act of October 1940 controlled in Fairfax County. The condemnation authority granted by Congress in that Act, as amended in 1941 authorizing condemnation of public works, including sewers, is significantly legally different from the power granted in the instant case."

.Under the Water Resources Development Act of 1986, Pub.L. No. 99-662, § 601, 100 Stat. 4082, 4137, 4142 (1986), the government's power herein was limited to securing full ownership from willing sellers. Its powers of expropriation were limited to acquiring easements over private land for flood control and environmental protection. It was not given authority to expropriate property for recreational development and public access. Nonetheless, that effectively has been done herein.